**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MISSOURI SOUTHERN DIVISION**

| | | |
|---|---|---|
| ROSARIO YANEZ ALFARO,<br><br>Petitioner,<br>v.<br><br>JASON JOHNSON, in his official capacity as Sheriff of the Greene County Jail, *et al*.<br><br>Respondents.[1] | ) | No. 26-03484-CV-S-BP |

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

Petitioner entered this country in 2002 and has been detained by the Department of Homeland Security ("DHS") since July 2026. Pending is his Petition for Writ of Habeas Corpus, in which he argues the Due Process Clause require that he be released or, in the alternative, granted a bond hearing. The Court concludes the Petition should be **DENIED**.

## I. BACKGROUND

Petitioner alleges (and Respondents do not dispute) the following facts. Petitioner is a citizen of Mexico who entered the United States without inspection in June 2002 and remained in the country. (Doc. 1, ¶¶ 1-2, 37.) In July 2026 he was stopped by local police for a traffic violation, then turned over to DHS's custody. (Doc. 1, ¶ 40.) DHS initiated removal proceedings later that month and he has been in DHS's custody ever since. (Doc. 1, ¶¶ 6, 14.)

Petitioner's detention is authorized by 8 U.S.C. § 1225, which (in § 1225(b)(2)(A)) provides that an alien in Petitioner's circumstances "shall be detained" pending the conclusion of

[1] While Petitioner is being held pursuant to the authority of federal officials, he is being held at the Greene County (Missouri) jail. Jason Johnson is the Greene County Sheriff, and the Court substitutes him in the place of Jim C. Arnott, whom he recently replaced. However, through the remainder of this Order, the term "Respondents" refers to the federal officials under whose authority Petitioner's detention has been effectuated.

removal proceedings. *See also Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026). Relying on this provision, Respondents have declined to afford Petitioner an opportunity to seek release on bond. Petitioner does not dispute that § 1225 applies to him or that § 1225 does not permit him to seek bond. Instead, he argues that he has a liberty interest in his freedom because he has lived in the United States for approximately twenty-four years and in that time has established family, economic, and community bonds in this country. He further contends that, because he has this liberty interest, applying § 1225 and automatically denying him an individualized determination regarding his risk of flight or danger to the community violates his due process rights.

As discussed more fully below, the Court concludes the Petition should be **DENIED**.

## II. DISCUSSION

Section 1225(b)(2)(A) requires that "if . .. an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained" and thus does not contemplate consideration for bond. *See generally Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026). Petitioner does not dispute this understanding of § 1225(b)(2)(A). He also does not challenge the process that was utilized to determine that he is an alien seeking admission or whether he is entitled to be admitted into the country. Instead, he argues that the Fifth Amendment requires that additional facts be considered before he can be denied bond (such as whether he is a danger to the community or is likely to not appear for hearings as required). In other words, Petitioner does not challenge the process that was utilized to determine the facts required by § 1225; he argues the Constiution requires that additional facts and issues be considered.[2] However, the Court concludes the Fifth

[2] Thus, the Court disagrees that the framework from *Mathews v. Eldridge*, 424 U.S. 319 (1976), is relevant here. *Mathews* is typically utilized to determine whether the procedures used satisfy procedural due process. *E.g.*, *Medina v. California*, 505 U.S. 437, 443 (1992) ("In *Mathews*, we articulated a three-factor test for evaluating procedural due process claims[.]"). Moreover, *Mathews* requires consideration of, among other things, the risk of erroneous deprivation and the value of additional procedures in preventing errors, 424 U.S. at 335, but these inquiries are of limited value unless it is first established that there is a substantive right at issue. Put another way, an erroneous deprivation can occur only if Petitioner is correct in contending the Fifth Amendment requires consideration of the

Amendment does not require consideration of whether an alien applying for admission is a danger to the community or a flight risk before he or she can be detained.

An alien who enters the country illegally or without permission "has only those rights regarding admission that Congress has provided by statute." *Department of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 140 (2020). This is because "an alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application, for the power to admit or exclude aliens is a sovereign prerogative." *Landon v. Plasencia*, 459 U.S. 21, 32 (1982). When "an alien gains admission to our country and begins to develop the ties that go with permanent residence his constitutional status changes accordingly," *id.*, but here Petitioner was not allowed into the country, and whatever ties he established after entering without permission (*e.g.*, on bond or parole) do not create an entitlement to those same protections.

When these principles are applied here, the Court concludes Petitioner is not entitled to the same considerations as a citizen (or an alien permitted to enter the country) facing the prospect of detention. This conclusion is best exemplified by the Supreme Court's decision in *Demore v. Kim*, 538 U.S. 510 (2003). There, the Court addressed 8 U.S.C. § 1226(c), which requires the Attorney General to take into custody any alien who has been convicted of one or more specified crimes. The petitioner in that case "argued that his detention under § 1226(c) violated due process because [there was] no determination that he posed either a danger to society or a flight risk." *Demore*, 538 U.S. at 514. In rejecting this claim, the Court noted that it "has firmly and repeatedly endorsed" the proposition that "[i]n the exercise of its broad power over naturalization and

---

additional facts he has identified—and applying *Mathews* presupposes he is correct without answering that question. *See Connecticut Dep't of Public Safety v. Doe*, 538 U.S. 1, 8 (2003). Thus some (but certainly not all) judges analyzing claims like Petitioner's have concluded that *Mathews* does not provide the proper analytical framework. *E.g.*, *Montoya v. Chamberlain*, 2026 WL 1602930, at *5-6 (W.D. Mo. June 4, 2026); *Cervantes Merino v. Whitmore*, 2026 WL 1034395, at *3-4 (N.D. Iowa Apr. 16, 2026); *see also Bernal v. Frink*, 2026 WL 1804234, at *2 (S.D. Tex. June 23, 2026).

immigration, Congress regularly makes rules that would be unacceptable if applied to citizens." *Id*. at 521 (2003) (quotation omitted). In particular, the Court "has recognized detention as a constitutionally valid aspect of the deportation process." *Id*. at 523. Thus, in several other circumstances, the Court had previously upheld statutes and policies restricting the release of aliens without individualized inquiries while removal/deportation proceedings were pending, even though such inquiries might be required before a citizen or someone permitted to enter the country could be detained. *Id*. at 523-24 (citing cases).

The Eighth Circuit applied *Demore* in *Banyee v. Garland*; in that case, the petitioner had been detained for a year pursuant to § 1226(c) while awaiting a final decision regarding whether he would be removed. He argued "the lengthy detention violated due process, at least in the absence of individualized review." 115 F.4th 928, 930-31 (8th Cir. 2024). In other words, notwithstanding the Supreme Court's decision in *Demore*, the petitioner argued that due process required he be considered for bond after he had been detained for a certain period of time. The Eighth Circuit rejected this claim, noting that *Demore* was merely the latest case in which the Supreme Court had (1) upheld categorical and mandatory rules applicable to the detention of aliens and (2) declined to find the Constitution required individualized evaluation. *Id*. at 931-33. The court further concluded that Supreme Court precedent "leave[s] no room for a multi-factor 'reasonableness' test" and, instead of applying a "*Mathews*[*v. Eldridge*]-type inquiry," *Demore* "opted for a bright-line rule instead: the government can detain an alien for as long as deportation proceedings are still pending." *Id*. at 933 (emphasis and quotation omitted).[3]

Petitioner argues *Demore* does not apply here because that case addressed § 1226(c) and thus involved a limited class of aliens: those who had been convicted of certain crimes. (Doc. 8,

[3] This aspect of *Banyee* rejecting utilization of *Mathews* further supports the point made in footnote 2, above.

pp. 10-11.) Moreover, *Demore* referred to Congressional "findings concerning recidivism and failures to appear among that population." (Doc. 8, p. 11.) The Court is not persuaded these observations are constitutionally relevant. *Demore* mentioned there was evidence before Congress "suggesting that permitting discretionary release of aliens pending their removal hearings would lead to large numbers of deportable criminal aliens skipping their hearings and remaining at large in the United States unlawfully," *Demore*, 538 U.S. at 527, but it did not hold that such evidence (or any particular Congressional findings) were necessary to justify the mandatory detention of aliens who committed serious crimes. Put another way, these Congressional findings did not play a role in the constitutional analysis. Similarly, the fact that § 1226(c) applied to only certain aliens was not discussed as a relevant factor.

Moreover, the parallels between this case and *Demore* are more significant than Petitioner acknowledges. The petitioner in *Demore* was a lawful permanent resident, but later committed (and was convicted of) crimes that effectively terminated his status as a lawful permanent resident. Thus, (1) he was not in the country legally or with permission, (2) removal proceedings commenced, and (3) § 1226(c) required that he be detained pending completion of those removal proceedings. Similarly, (1) Petitioner was not in the country legally or with permission, (2) removal proceedings commenced, and (3) § 1225 required that he be detained pending completion of those removal proceedings. *Demore* held that the petitioner did not have a liberty interest in being free in this country. Similarly, as a non-citizen who was not permitted to enter, Petitioner does not have a liberty interest in remaining free in the country and the fact that he was here without permission for many years does not grant him a protectible interest.

## III. CONCLUSION

Petitioner did not present himself for inspection when he entered the country, and he has not been granted any form of permission (such as bond or parole) to enter. He thus does not have a liberty interest recognized by the Constitution, and his detention during the pendency of his removal proceedings does not violate due process. Accordingly, the Petition for Writ of Habeas Corpus is **DENIED**.

**IT IS SO ORDERED.**

/s/ Beth Phillips
BETH PHILLIPS, JUDGE
UNITED STATES DISTRICT COURT

**DATE**: October 27, 2026